(85 South. 239)

No. 22737.

## COSMOPOLITAN ICE CO. v. HART et al.

(May 31, 1920. Rehearing Denied June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant ☞86(1)—Increased output of other plants affecting option to renew ice plant lease held to include plant under construction.**

Under a lease of an ice plant giving lessees an option to renew in case the output of all other ice plants in the city should be increased by 50 tons a day, another ice plant, about to begin operations at the time of the execution of the lease, whose output would itself be sufficient to release lessees from their obligations to renew, should be included in the estimate of increase.

2. **Landlord and tenant ☞86(1) — Increased output of other plants affecting option to renew ice plant lease held not restricted to those built between lease and notice.**

That the lease of an ice plant provided for an option to renew in case all other ice plants in the city should increase their output by 50 tons a day *held* not to restrict the estimate to the output of plants built between the time of the execution of the lease and the time for giving notice of renewal.

3. **Landlord and tenant ☞86(1) — Increased output of other plants affecting option to renew ice plant lease held to include reorganized plants.**

Where a lease of an ice plant provided that the lessees should have an option to renew in case the output of all other ice plants in the city should be increased by 50 tons a day, increase by the output of a plant, constructed in part from material of an old plant not in operation at the time of the execution of the lease, should be included.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Suit by the Cosmopolitan Ice Company against Louis P. Hart and others for rent. Judgment for defendants, and plaintiff appeals. Affirmed.

Merrick & Schwarz and Walter S. Lewis, all of New Orleans, for appellant Liquidators of Cosmopolitan Ice Co.

Denegre, Leovy & Chaffe, Harry McCall, Philip S. Gidiere, and J. Zach Spearing, all of New Orleans, for appellees.

PROVOSTY, J. Plaintiff company leased to the three defendants an ice plant for the term of one year, beginning March 15, 1910, subject to the following terms and conditions:

"The lessees shall be obligated to renew and extend this lease for the period of one year beginning March 15, 1911, and ending March, 1912, on the same terms and conditions as this present lease; that the lessors hereby agree to such renewal; but, as the execution of this lease and the annual rental therein fixed are predicated upon existing conditions, and any substantial increase in the number or capacity of ice plants in the city of New Orleans may seriously impair the value of this lease to lessees, it is agreed that the obligation of the lessees to renew shall cease and determine and the lessees shall have an option to renew if the total capacity of all ice plants in the city of New Orleans, on the fifteenth day of March, 1911, not counting the Central Ice & Cold Storage Company, Limited, Independent Ice & Distilled Water Manufacturing Company, Limited, Pelican Ice Company, and Crescent Ice Company, be increased fifty tons, or more, each twenty-four hours, above what it is on the 15th day of March, 1910 (the rated capacity of all plants other than the above named being, March 15, 1910, 825 tons).

"Notice of the lessees' intention to renew shall be given in writing on or before the first day of December, 1910; but if, between December 1, 1910, and March 1, 1911, new plants or additions to present plants, shall be erected or in course of erection to the extent above named, viz. fifty tons or more, the said notice of renewal shall not be binding upon lessees, who, in such event, shall have the option to renew or not to renew, said lease."

It will be noted that if at the expiration of the first year the total capacity of all the ice plants in the city, excepting the three plants named, had increased by 50 tons or more, the defendants were to be under no obligation to

renew the lease, but were merely to have an option to do so. They declined to renew, for the assigned reason that the capacity of the ice plants, other than those excepted, had increased by 50 tons or more; and this suit is for the rent of the second year. The question is as to whether there was or not such an increase.

Defendants claim that there was an increase of 35 tons by the Dixie Ice Company; 50, by the Audubon Ice Company; and 45, by the Wilburn Ice Factory.

Plaintiff admits that these increases took place, but denies that the outputs of the Audubon and Wilburn companies can be taken into account.

As to the Audubon, plaintiff argues that this plant was about to begin operation at the time the lease was entered into; that its output of 50 tons would of itself have been sufficient to release the defendants from the obligation to renew the lease; that the parties must be assumed to have known this, since their business interests required that they should keep informed, not only of the capacity of the plants actually in operation, but also of those about to begin operation; and that obviously the increase which, in the contemplation of the parties, was to convert the contract from an absolute obligation to a mere option, was an uncertain increase— not one which was thus certain to come about. Another argument is concisely expressed in the brief thus:

"In the second place, this plant cannot be considered because it was not built within the period mentioned in the lease, that is, between December 1, 1910, and March 1 (15?) 1911."

[1] The first of these arguments is answered: First, by the suggestion that if the parties had intended to except this plant they would have done so; and, next, by the fact that nothing shows that the parties knew of this plant, which was in course of construction in an out of the way part of the city. The one defendant who testified in the case said that this plant had not been excepted; and he was not contradicted.

[2] The second argument is obscure in its laconism. If it means what it implies, namely, only the output of plants built between December 1, 1910, and March 15, 1911, was to be considered in computing the 50-ton increase, all we can say is that such is not the condition of the contract.

The facts in connection with the Wilburn plant are that a plant of that name, belonging to a corporation, had been in operation in the city, but had ceased to be operated about a month or so before the date of the contract and begun to be dismantled, owing to its having to be moved, in consequence of the encroachments of the river; and that Mr. Wilburn, one of the shareholders, bought out his associates, and established individually a plant of the same name on another location, using part of the equipment of the old plant; the new plant having a larger capacity than the old.

[3] Evidently the output of this new plant must be considered to be an increase in the capacity of the plants as existing in the city at the date of the contract, since at that date the old plant had ceased to be an operating plant, and become nothing more at best than material of which a part could be utilized in the construction of another plant.

The trial court rejected plaintiff's demand. Judgment affirmed.